# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

DAVID NEWCOMB,

               Plaintiff,

    v.

KILOLO KIJAKAZI,[1]

               Defendant.

CIVIL ACTION NO. 3:20-CV-01552

(MEHALCHICK, M.J.)

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff David Newcomb ("Newcomb")'s claims for a period of disability and disability insurance benefits and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. (Doc. 1; Doc. 15-2, at 16). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 8). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  BACKGROUND AND PROCEDURAL HISTORY

On June 2, 2017, Newcomb filed applications for Title II and Title XVI benefits. (Doc. 15-5, at 3, 17). In these applications, Newcomb claimed disability beginning January 15, 2017. (Doc. 15-5, at 3, 17). Newcomb's claims were initially denied by the Social Security Administration on October 25, 2017. (Doc. 15-4, at 7, 12). Newcomb filed a request for a hearing before an Administrative Law Judge ("ALJ") on November 17, 2017. (Doc. 15-4, at 20). The hearing was held on May 14, 2019, before ALJ Edward L. Brady. (Doc. 15-2, at 37). In a written opinion dated June 12, 2019, the ALJ determined that Newcomb was not disabled and therefore not entitled to the benefits sought. (Doc. 15-2, at 27). Newcomb appealed the decision of the ALJ to the Appeals Council, who, on June 29, 2020, denied Newcomb's request for review. (Doc. 15-2, at 2).

On August 28, 2020, Newcomb commenced the instant action. (Doc. 1). The Commissioner responded on April 9, 2021, providing the requisite transcripts from the disability proceedings. (Doc. 14; Doc. 15). The parties then filed their respective briefs, with Newcomb alleging two errors warranting reversal or remand. (Doc. 19; Doc. 20).

## II.  STANDARDS OF REVIEW

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that

exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

B. J‍UDICIAL R‍EVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decision maker are supported by substantial evidence in the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Newcomb was disabled, but whether the Commissioner's determination that Newcomb was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of

the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In a decision dated June 12, 2019, the ALJ determined Newcomb "has not been under a disability, as defined in the Social Security Act, from January 15, 2017, through the date of this decision." (Doc. 15-2, at 27). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920(a).

### A.   STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the Social Security Regulations ("SSR") deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574, 416.974. The ALJ determined Newcomb "has not engaged in [SGA] since January 15, 2017, the alleged onset date." (Doc. 15-2, at 19). Thus, the ALJ's analysis proceeded to step two.

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. §§ 1520(c), 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "post-traumatic stress disorder (PTSD), bipolar disorder, degenerative disc disease of the cervical and lumbar spine, and diabetes mellitus." (Doc. 15-2, at 19). Additionally, the ALJ found that Newcomb has the following non-severe impairments of mild diabetic retinopathy, hyperlipidemia, seizure disorder, history of cerebrovascular accident, and migraine headaches. (Doc. 15-2, at 19).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(4)(iii), 416.925, 416.926). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that none of Newcomb's impairments, considered individually or in combination, met or equaled a Listing in the version of 20 C.F.R. Part 404,

Subpart P, Appendix 1 that was in effect on the date the ALJ issued his decision. (Doc. 15-2, at 19). Specifically, the ALJ considered Listings 1.04 (disorders of the spine); 9.00 (endocrine disorders); 12.04 (depressive, bipolar and related disorders); and 12.15 (trauma- and stressor-related disorders). (Doc. 15-2, at 19-22).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

Newcomb alleged that his impairments caused the following symptoms: anxiety, lack of sleep, isolation, back and leg pain, and difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing, stairs, seeing, completing tasks, concentration, and getting along with others. (Doc. 15-2, at 23). After examining his statements and the medical evidence, the ALJ found that Newcomb's impairments could reasonably be expected to cause the alleged symptoms, but that his statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical evidence

- 7 -

and other evidence in the record. (Doc. 15-2, at 23). The ALJ then went on to detail - Newcomb's medical records and treatment history. (Doc. 15-2, at 23-26).

Based on his consideration of the above referenced medical opinions and of the other relevant evidence of record, the ALJ assessed that, during the relevant period, Newcomb had the RFC to perform light work, but with the following limitations:

> [Newcomb] could perform occasional balancing, stooping, kneeling, crouching and crawling. He is limited to jobs involving few changes in workplace routine or setting and no interaction with the public and occasional interaction with coworkers and supervisors.

(Doc. 15-2, at 22).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv).

Here, the ALJ determined Newcomb is unable to perform any past relevant work. (Doc. 15-2, at 26). The ALJ noted Newcomb's past relevant work including positions as a laborer screen washer, graphic designer, and creative director, but the exertional requirements of each exceeded Newcomb's RFC. (Doc. 15-2, at 26).

F.  STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3); 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v).

The ALJ made vocational determinations that Newcomb was 47 years old on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. § 404.1563; 20 C.F.R. § 416.963. (Doc. 15-2, at 26). The ALJ also noted that Newcomb "has at least a high school education and is able to communicate in English" as considered in 20 C.F.R. §§ 404.1564, 416.964. (Doc. 15-2, at 26). The ALJ determined that upon consideration of these factors, Newcomb's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. §§ 416.969; 416.969(a); (Doc. 15-2, at 26). The ALJ specifically identified occupations of cleaner polisher of small products, ticket and labeler, and small parts assembler with positions ranging from 46,000 to 180,000 nationally. (Doc. 15-2, at 27).

As a result of this analysis, the ALJ determined that Newcomb was not disabled and denied Newcomb's applications for benefits. (Doc. 15-2, at 27).

## IV.   DISCUSSION

On appeal, Newcomb advances two main arguments. First, Newcomb asserts that the ALJ's finding at step three of the sequential evaluation was erroneous and that he meets or exceeds Listings 12.04 and 12.15. (Doc. 19, at 3-4). Second, Newcomb argues that the ALJ "failed to reasonably consider treating physician opinions," or, alternatively, failed to weigh the evidence more favorably in his case. (Doc. 19, at 5-7). In response, the Commissioner contends that the ALJ reasonably found that Newcomb does not meet Listings 12.04 or 12.15. (Doc. 20, at 16). Further, the Commissioner asserts that substantial evidence supports the ALJ's evaluation of the medical opinions pursuant to the controlling regulations. (Doc. 20, at 24). For the following reasons, the Court finds that the ALJ properly applied the law and that substantial evidence supports the ALJ's findings.

### A.   THE ALJ DID NOT ERR IN HIS EVALUATION OF LISTINGS 12.04 AND 12.15

First, Newcomb contends that he meets or exceeds Listings 12.04 due to his bipolar disorder and 12.15 due to his PTSD based on his history of treatment and the fact that these mental disorders "continue to plague [him] through the present." (Doc. 19, at 3). Newcomb asserts that the ALJ improperly found his mental disorders did not satisfy Listings 12.04 and 12.15 because he "cannot function without rigorous safeguards and structure, which means he meets both listings, and should be awarded benefits." (Doc. 19, at 4). In response, the Commissioner argues that the ALJ did not err in his evaluation because the ALJ properly found treating social worker Marcia Coranata, LSW, ("Ms. Coranata")'s opinion

unpersuasive and a review of the evidence shows that Newcomb does not meet either Listing. (Doc. 20, at 20).

A claimant bears the burden of establishing that his impairment meets or equals a listed impairment. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir.2007). In general, the required level of severity for an affective disorder may be established when the criteria for both parts A and B are met or when the criteria in paragraph C are satisfied. 20 C.F.R. pt. 404, subpt. P, App. 1 §§ 12.04, 12.15. The part A criteria "are medical findings that substantiate the presence of the mental disorder." *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 116 n. 4 (3d Cir.2012) (citing 20 C.F.R. pt. 404, subpt. P, App. 1, § 1200(A)). To satisfy the "B" criteria of Listings 12.04 and 12.15, the mental impairments must satisfy at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, App. 1 §§ 12.04(B), 12.15(B). "A 'marked' restriction or difficulty is one that is more than moderate but less than extreme and that 'interfere[s] seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Cunningham*, 507 F. App'x at 116 (citing 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(C)). Paragraph C of Listings 12.04 and 12.15 require demonstration of one of the following: 1) repeated and extended episodes of decompensation; 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3) current history of one or more years' inability to function outside a highly supportive living

arrangement, with an indication of a continued need for such an arrangement. 20 C.F.R. pt. 404, subpt. P, App. 1 §§ 12.04(C), 12.15(C).

Here, the ALJ considered Newcomb's mental impairments to determine whether he meets the level of severity of Listings 12.04 and 12.15. (Doc. 15-2, at 19). The ALJ noted that Newcomb's counsel argued that he meets Listing 12.04 based on the questionnaire completed by Ms. Coranata, which states Newcomb is not able to work due to his mental impairments and that "[h]e is stable at this time, but any added pressure could trigger suicidal ideation/attempts again." (Doc. 15-2, at 19; Doc. 15-16, at 77). However, the ALJ found that "evidence of record shows that [Newcomb] is stable with the use of medication and limited outpatient care. He had one hospitalization after what is noted as a poor reaction to medication." (Doc. 15-2, at 19). Thus, the ALJ concluded that Newcomb does not meet the Listing 12.04 level of severity because "his mental status evaluations are generally within normal limits with mild to moderate limitations at best." (Doc. 15-2, at 19).

Additionally, the ALJ considered both the B and C criteria. Under paragraph B, he reviewed all requirements and found that Newcomb did not meet any of them. (Doc. 15-2, at 20-22). The ALJ found that Newcomb has a mild degree of limitation in understanding, remembering, or applying information. (Doc. 15-2, at 21). Though Newcomb reported that he cannot follow written instructions, the ALJ noted that "[s]ince 2017, he has been stable on medications with mental status exams consistently showing he is cooperative, has normal speech, and anxious and depressed mood with appropriate affect, and relevant thought processes." (Doc. 15-2, at 21). In social functioning, the ALJ found that Newcomb has a moderate degree of limitation in interacting with others. (Doc. 15-2, at 21). Though Newcomb complained of self-isolating and difficulty getting along with family, the ALJ noted that "[h]e

- 12 -

is cooperative, has normal speech, and anxious and depressed mood with appropriate affect, and relevant thought process." (Doc. 15-2, at 21). Although Newcomb reported difficulty with concentration and completing tasks, the ALJ found that Newcomb has no more than a moderate limitation in his ability to concentrate, persist or maintain pace. (Doc. 15-2, at 21). The ALJ noted that the reports of Dr. Cole stated "[Newcomb's] memory, attention and concentration were all mildly impaired" and Newcomb "cares for his young son, manages his own personal care, shops, mows, cooks, cleans, and drives." (Doc. 15-2, at 21).

Further, the ALJ found that Newcomb has no more than a moderate degree of limitation in adapting and managing oneself. (Doc. 15-2, at 22). Though Newcomb indicated some difficulties with self-care, the ALJ noted that Newcomb: "cares for his young son, manages his own personal care, shops, mows, cooks, cleans, and drives;" "is cooperative, has normal speech, and anxious and depressed mood with appropriate affect, and relevant thought process;" and "has no suicidal or homicidal ideations, his concentration and attention are adequate, has no memory impairment, good judgment and impulse control, and partial insight." (Doc. 15-2, at 22). The ALJ concluded that Newcomb failed to establish the presence of the paragraph B criteria. (Doc. 15-2, at 22). The ALJ further concluded that Newcomb failed to establish the presence of paragraph C criteria. (Doc. 15-2, at 22). The ALJ found that the evidence in the record "does not support a finding that [Newcomb] has a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." (Doc. 15-2, at 22).

Newcomb asserts that he meets or exceeds Listings 12.04 due to his bipolar disorder and 12.15 due to his PTSD. (Doc. 19, at 3). Arguing that both his bipolar disorder and PTSD "continue to plague [him] through the present," Newcomb relies on Ms. Coranata's

evaluation that states: "He is stable at this time, but any added pressure could trigger suicidal ideation/attempts again." (Doc. 15-16, at 77; Doc. 19, at 3). However, the ALJ already considered this argument in his determination when he reviewed Ms. Coranata's report, finding that "the evidence of record shows [Newcomb] is stable with the use of medication and limited outpatient care." (Doc. 15-2, at 19). Referencing Newcomb's prior hospitalizations, the ALJ concluded that "[o]verall, [Newcomb's] mental status evaluations are generally within normal limits with mild to moderate limitations at best." (Doc. 15-2, at 19). Further, though Newcomb contends he shows an extreme limitation in his ability to adapt or manage himself, he does not challenge the ALJ's determination that Newcomb had only mild or moderate difficulties in daily living, social, functioning, and maintaining concentration, persistence, or pace. (Doc. 15-2, at 20-22). Thus, even if Newcomb's decompensation episode qualified under the Listings, the requirement that his mental impairments cause at least one marked impairment and repeated episodes of decompensation remains unsatisfied. *See Dee v. Berryhill*, No. 17-CV-73, 2018 WL 783733, at *2 (W.D. Pa. Feb. 8, 2018); 20 C.F.R. pt. 404, subpt. P, App. 1 §§ 12.04(B), 12.15(B).

Additionally, Newcomb asserts that his hospitalization after the breakup with his girlfriend demonstrates that his mental disorders meet or exceed Listings 12.04 and 12.15. (Doc. 19, at 3). In response, the Commissioner cites Newcomb's statement that the reason he was hospitalized was for an adverse reaction to Lamictal medication. (Doc. 15-2, at 48; Doc. 20, at 17). During the administrative hearing, the ALJ questioned Newcomb about his hospitalizations: "You had, I believe, one hospitalization, but it looked like it was – the medication that you were taking didn't mix well with you, that you had a reaction to it. Is that fair?" (Doc. 15-2, at 48). To which, Newcomb responded: "Yes." (Doc. 15-2, at 48).

Further, Newcomb stated that he had not experienced a manic episode for at least a year before the hearing. (Doc. 15-2, at 51). Indeed, Newcomb testified that his mental health had improved with the use of medication and that he did not have any thoughts of suicide. (Doc. 15-2, at 51). Additionally, the ALJ noted that Newcomb was able to take care of his son, as well as manage his own personal care, shop, mow, cook, clean, and drive. (Doc. 15-2, at 20). The ALJ found that "[n]o treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairments." (Doc. 15-2, at 20).

In summarizing the evidence, the ALJ stated that Newcomb "is stable with the use of medication and limited outpatient care." (Doc. 15-2, at 19). While stability does not necessarily translate into work-related abilities, this is but one of the reasons relied upon by the ALJ in evaluating the severity of Newcomb's mental impairments. *See Grek v. Colvin*, No. 1:14-CV-228, 2015 WL 3915835, at *7 (W.D. Pa. June 25, 2015) (finding that claimant did not satisfy Listing 12.04 because, "although Plaintiff did experience highs and lows throughout the relevant period – and required hospitalization during her lowest points – her 'condition improved significantly after her hospitalizations.'"). The ALJ accommodated Newcomb's social and concentration shortcomings, by restricting him to "jobs involving few changes in workplace routine or setting and no interaction with the public and occasional interaction with coworkers and supervisors," which directly accounts for the limitations found by Ms. Coranata. (Doc. 15-2, at 22).

Although Newcomb asserts that the record contains evidence that should have led the ALJ to find that he has marked limitations in some of the above-listed areas of functioning, such evidence does not conclusively show marked or extreme limitations in Newcomb's areas

of functioning, and the Court cannot simply reweigh the evidence at this juncture in order to come to a different conclusion than that reached by the ALJ as discussed above. *See Knepp, 204 F.3d at 83*. The ALJ has already considered the evidence of record and made findings on this issue, and the Court finds that substantial evidence supports that decision. *See Rhome v. Comm'r of Soc. Sec.*, No. 18-CV-1532, 2020 WL 1532332, at *1 n.1 (W.D. Pa. Mar. 31, 2020) (declined to reweigh the evidence when claimant asserted record contains evidence that should have led ALJ to find he has marked limitations where such evidence does not conclusively show marked or extreme limitations). Therefore. The Court finds that the ALJ appropriately found that the criteria of Listings 12.04 and 12.06 are not satisfied.

B. The ALJ did not Err in His Evaluation of Opinion Evidence

Newcomb argues that the ALJ "did not provide reasonable explanations for disregarding treating providers" and "failed to reasonably consider treating physician opinions." (Doc. 19, at 5). Newcomb contends that the ALJ "arbitrarily dismissed[ed]" Ms. Coranata's opinion and inserted his "lay opinion without specific evidence." (Doc. 19, at 7). In response, the Commissioner asserts that Newcomb has only provided the Commissioner with an opinion by a treating social worker, who "is not an 'acceptable medical source' who may give a medical opinion." (Doc. 20, at 20). Despite this, the Commissioner further asserts that the ALJ still found Ms. Coranata's opinion was not persuasive because Newcomb's other treatment providers routinely documented adequate or "mild" impairments at mental status examinations. (Doc. 15-2, at 21).

The Third Circuit has ruled that the ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "[RFC]" is defined as that

which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. When determining an individual's RFC, the ALJ must consider all the evidence of the record including medical signs and laboratory findings, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship,

the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981).

In this case, the ALJ properly considered the evidence of record and the relevant factors of supportability and consistency. At the onset, the ALJ correctly concluded Newcomb did not have a medically determinable mental impairment since there was no "acceptable medical source" in the record to establish the existence of the alleged mental impairments. *See* 20 C.F.R. §§ 404.1521, 416.921 ("a physical or mental impairment must be established by objective medical evidence from an acceptable medical source"); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, section 12.00 (C)(1) (requiring "objective medical evidence from an acceptable medical source to establish ... a medically determinable mental disorder"). The

- 18 -

regulation lists professions qualifying as an "acceptable medical source" to include licensed physicians (medical or osteopathic doctor) and licensed psychologists. *See* 20 C.F.R. § 416.902(a)(1)-(a)(2) (sections (a)(1) – (a)(5) effective March 27, 2017, for all claims) (definition of "acceptable medical source"). The social worker, Ms. Coranata, does not qualify as an "acceptable medical source." *See* 20 C.F.R. § 416.902(a)(1)-(a)(2); *Barzyk v. Saul*, No. 4:18-CV-02262, 2020 WL 1272511, at *13 n.5 (M.D. Pa. Feb. 18, 2020), *report and recommendation adopted*, No. 4:18-CV-02262, 2020 WL 1244591 (M.D. Pa. Mar. 16, 2020).

Even if Ms. Coranata was an acceptable medical source, as Newcomb applied for benefits after March 27, 2017, the ALJ properly applied the new set of Social Security Regulations for evaluating medical evidence that eliminates the hierarchy of medical opinions and states that an ALJ will not defer to any medical opinions, even those from treating sources. (Doc. 15-2, at 16); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In addition to objective medical evidence, in evaluating the intensity and persistence of pain and other symptoms, the ALJ should consider the claimant's daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Newcomb incorrectly asserts that the ALJ "arbitrarily dismiss[ed]" Ms. Coranata's opinion and "insert[ed his] lay opinions without specific evidence to base [his] opinion on." (Doc. 19, at 7). In fact, even though Ms. Coranata is not an "acceptable medical source," the ALJ did evaluate her opinion and found that it was not persuasive because all other mental status examinations reported that Newcomb was at most mildly impaired due to anxiety and nervousness in the evaluation. (Doc. 15-2, at 21); *see Barzyk*, 2020 WL 1272511, at *13 n.5.

Considering Ms. Coranata's opinion in conjunction with Newcomb's activities of daily living, including caring for his young son, managing his own personal care, shopping, mowing, cooking, cleaning, and driving, the ALJ found that "[w]hile none of these activities alone [are] dispositive, taken together they suggest that [Newcomb] is capable of performing work activity on a sustained and continuous basis within the above parameters." (Doc. 15-2, at 25). Therefore, in reconciling with contrasting medical opinions and inconsistencies in Newcomb's abilities and limitations, the ALJ concluded that the opinion of Ms. Coranata was unpersuasive and inconsistent with the overall medical record. (Doc. 15-2, at 21); *see Williams o/b/o J.H. v. Kijakazi*, No. 1:20-CV-00624, 2021 WL 4439438, at *13 (M.D. Pa. Sept. 28, 2021) ("ALJ chose between contrasting medical opinions, giving greater weight to those opinions which he found were more congruent with [the claimant's] medical records and activities of daily living.")

Finally, Newcomb asserts that the ALJ mischaracterized his September 6, 2017, hospitalization as a "poor reaction to medication" because "he has actually had at least four inpatient treatments since his alleged onset: two inpatient admissions at New Perspectives; St. Luke's Hospital[]; and Pocono Medical Center[,] in addition to his treatment with Carbon Monroe Pike Mental Health, Dr. Martha Turnberg, Redco, and Ms. Marcia Coranata, LSW." (Doc. 19, at 5). As discussed *supra* and contrary to Newcomb's allegations, at the administrative hearing, Newcomb confirmed the ALJ's characterization of the September 6, 2017, hospitalization when the ALJ questioned: "You had, I believe, one hospitalization, but it looked like it was – the medication that you were taking didn't mix well with you, that you had a reaction to it. Is that fair?" (Doc. 15-2, at 48). To which Newcomb responded: "Yes." (Doc. 15-2, at 48). Additionally, Jeannie X. Lawrence, MD ("Dr. Lawrence"), with the

ReDCo Group, examined Newcomb on August 16, 2018, and reported that Newcomb has a history of suicide attempts and was hospitalized in September 2017, but that his "[suicide ideation] was triggered by his medication (thinks it was Lamictal)." (Doc. 15-16, at 50). Moreover, in his decision, the ALJ stated that "[m]entally, the record shows regular mental health treatment with two psychiatric admissions, one due to reaction to new medication. Since 2017, [Newcomb] has been stable on medications with mental status exams consistently showing he is cooperative, has normal speech, and anxious and depressed mood with appropriate affect, and relevant thought process." (Doc. 15-2, at 24).

The ALJ's characterization of the September 6, 2017, hospitalization is reflected in Dr. Lawrence's mental status evaluation record and was confirmed by Newcomb in the administrative hearing. (Doc. 15-2, at 48; Doc. 15-16, at 50). Reviewing the evidence and the ALJ's decision, the Court finds that the ALJ did not mischaracterize Newcomb's prior hospitalization or mental status examination findings. *See Dercole v. Saul*, No. 2:18-CV-12887, 2021 WL 1399861, at *7 (D.N.J. Apr. 14, 2021) (ALJ did not mischaracterize hospitalization "as solely substance abuse" because he considered medical opinions and provided reasons for discounting those opinions).

In sum, the ALJ's decision to discount Ms. Coranata's opinion, giving greater weight to those opinions which he found were more congruent with Newcomb's medical records and activities of daily living, is supported by substantial evidence. *See Williams o/b/o J.H,* 2021 WL 4439438, at *13. "We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." *Hartranft,* 181 F.3d at 360. Ms. Williams' argument simply asks the court to reweigh the evidence, which we cannot do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir.

Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (stating that the court may not weigh the evidence or substitute our conclusions for those of the ALJ). Because the Court is not permitted to reweigh the evidence, the Court concludes that the ALJ did not err in his consideration of the opinion evidence of record.

## V.   CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Newcomb disability benefits and directs that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Newcomb. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

**Dated: January 18, 2022**                    s/ *Karoline Mehalchick*
                                               **KAROLINE MEHALCHICK**
                                               **Chief United States Magistrate Judge**

- 22 -